UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM P. SHANNON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-2503** |
| **CHAD LEE, WARDEN** | **SECTION "C"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.      Factual and Procedural Background**

The petitioner, William P. Shannon ("Shannon") is a convicted inmate currently incarcerated in the Franklin Parish Detention Center in Winnsboro, Louisiana.[2] On September 20, 2010, Shannon was charged by Bill of Information in St. Tammany Parish with one count of production and manufacture of marijuana.[3] Shannon entered a plea of not guilty to the charge at his arraignment held October 11, 2010.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 3, Bill of Information, 9/20/10.

[4] St. Rec. Vol. 1 of 3, Minute Entry, 10/11/10.

The record reflects that Stacey Anne Matherne inherited a house located at 2923 Camilla Drive in Slidell, Louisiana.[5] She lived in the home with her roommate, Julie Anne Oakley, and Shannon. She met Shannon approximately three years prior to the incidents involved in this case, and he was her boyfriend for about one of those years. When Shannon moved in, he initially slept on the couch, and Matherne slept in the master bedroom. In April or May of 2010, she allowed Shannon to have the master bedroom for fear that he would use violence against her if she refused. Matherne also was afraid Shannon would burn the house down if she tried to evict him. Shannon eventually "took over" another bedroom, where Matherne had only stored tools. Shannon kept that room locked.

On August 13, 2010, while looking for a screwdriver to repair a table, Matherne found that the door to the bedroom was unlocked. When she entered the room, she noticed light coming from the closet. She looked in the closet and found marijuana plants growing behind a slab of sheetrock which was placed against the wall.

Matherne was on probation for prior criminal charges, and so she immediately confronted Shannon about the marijuana plants.[6] Shannon began "ranting and raving," telling her it was his house, and he would have what he wanted in the house. Matherne told Shannon to "get [the marijuana plants] out or the police will get them out." Shannon called Matherne a "stupid f---ing whore," and threatened to kill her. He then threw Matherne's keys, a group of approximately twenty keys, at her and they struck her in the face. Matherne grabbed her miniature Dachshund and ran to

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Shannon*, No. 2011-KA-1730, 2012 WL 1552011, at *1 (La. App. 1st Cir. 2012); St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2011-KA-1730, 5/2/12.

[6]Matherne was convicted of two counts of domestic battery, simple assault, disturbing the peace, and resisting arrest in 2009.

her neighbor's house.  Shannon shouted that he was going to blame the marijuana plants on her and Oakley.  Oakley went to get ice for Matherne's face and followed her out of the house.

Matherne later went back to the house because she did not have her cigarettes or any money.  When she did, Shannon attacked her, throwing her to the floor and striking her head on concrete.  He tried to prevent her from leaving, but she was able to escape in Oakley's truck.  Matherne went to the home of a "DEA" agent who lived on the street.

Francisco Dean, an Officer with the Louisiana Division of Probation and Parole and former Louisiana Office of Alcohol and Tobacco Control Agent, lived three doors from Matherne.  He knew Matherne because she mowed his lawn through her grass-cutting business.  On August 13, 2010, Matherne arrived at his house late in the evening.  Her face was swollen, her eyes were puffy, and she was very nervous.  She told him that her boyfriend "beat me up because I found his marijuana plants."  Agent Dean reported the incident to the Slidell Police Department.

Slidell Police Department Officer Michael Giardina responded to a report of a domestic disturbance involving Matherne.  He too saw that her face was swollen and bleeding. Matherne told Officer Giardina that she had been in "an altercation" with Shannon "over her finding some marijuana plants in the residence."  She told him that Shannon threw keys at her face.  She also gave the police a key to the house and permission to enter.

Officer Giardina and other police officers knocked on the front door of the home and yelled for Shannon to open the door.  When he did not respond, the officers entered using Matherne's key.  Shannon came down the hall from the back bedrooms and asked, "Where is your f-- search warrant?" Shannon cursed at the officers and acted aggressively towards them.  After they placed

him into custody, he told them to take him to jail, "because he's going to beat the charges anyway." Officer Giardina transported Shannon to jail.

Agent Brian Dale Brown, with the Slidell Police Department Major Crimes and Narcotics Unit, entered the back bedroom of Matherne's home where he found men's clothing in the room. He also found a key to a locked bedroom on the dresser in the area where Matherne had indicated the key would be located. The Agent entered the locked bedroom and, in the closet, found a small air-conditioning unit, numerous fluorescent lights above the unit, and a timer. There was also potting soil on the ground, large black buckets with root systems, and a fan. Marijuana plants were stuffed behind tools in different areas of the room.

Shannon was tried before a jury on May 9 and 10, 2011, and was found guilty of attempted production and manufacture of marijuana.[7] The State filed a multiple offender bill on May 12, 2011, to which Shannon entered a plea of not guilty.[8] At a hearing held June 30, 2011, the Trial Court denied Shannon's post-trial motions.[9] Shannon thereafter admitted the allegations in the multiple bill and the Court found him to be a third felony offender.[10] After waiver of legal delays, the Court sentenced Shannon as a multiple offender to serve fifteen (15) years at hard labor without benefit

---

[7]St. Rec. Vol. 1 of 3, Trial Minutes, 5/9/11; Trial Minutes, 5/10/11; Jury Verdict, 5/10/11; Trial Transcript, 5/9/11; St. Rec. Vol. 2 of 3, Trial Transcript (continued), 5/9/11; Trial Transcript, 5/10/11.

[8]St. Rec. Vol. 2 of 3, Minute Entry, 5/12/11; Multiple Bill, 5/12/11; St. Rec. Vol. 2 of 3, Hearing Transcript, 5/12/11.

[9]St. Rec. Vol. 1 of 3, Sentencing Minutes, 6/30/11; Motion for New Trial, 5/13/11; Trial Court Order(1), 6/30/11; Motion for Post-Verdict Judgment of Acquittal, 5/13/11; Trial Court Order(2), 6/30/11.

[10]St. Rec. Vol. 1 of 3, Sentencing Minutes, 6/30/11; St. Rec. Vol. 2 of 3, Hearing Transcript, 6/30/11. The Trial Court originally sentenced Shannon on June 27, 2011, and vacated that multiple offender adjudication and sentencing to consider the post-trial motions before resentencing. *Id*.; St. Rec. Vol. 1 of 3, Hearing Minutes, 6/27/11; St. Rec. Vol. 2 of 3, Hearing Transcript, 6/27/11.

of probation or suspension of sentence and to pay a $5,000.00 mandatory fine.[11] The Trial Court also denied Shannon's motion to reconsider the sentence.[12]

On direct appeal, Shannon's appointed counsel argued that the Trial Court abused its discretion by failing to consider relevant mitigating factors which resulted in the imposition of an excessive sentence.[13] Shannon filed a *pro se* supplemental brief in which he argued three additional errors:[14] (1) the Trial Court erred in denying the defense's request to introduce certain testimonial impeachment evidence although counsel was allowed to proffer the evidence; (2) the prosecutor was unethical in referring to the defendant as "Mr. Criminal" during closing arguments; and (3) the prosecutor made comments during trial and in summation that vouched for the credibility of the State's witness. On May 2, 2012, the Louisiana First Circuit affirmed Shannon's conviction and sentence finding no merit in the counseled claim or Shannon's first *pro se* claim and also finding that Shannon's two other *pro se* claims were not preserved for review on appeal by objection at trial.[15]

Shannon's conviction and sentence became final thirty (30) days later, on June 1, 2012, because he did not file for rehearing or seek review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).

---

[11]*Id.*; St. Rec. Vol. 1 of 3, Reasons for Judgment, 8/2/11; St. Rec. Vol. 2 of 3, Hearing Transcript, 6/30/11.

[12]*Id.*; St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 6/30/11; Trial Court Order(3), 6/30/11.

[13]St. Rec. Vol. 3 of 3, Appeal Brief, 2011-KA-1730, unfiled copy.

[14]St. Rec. Vol. 3 of 3, *Pro Se* Appeal Brief, 2011-KA-1730, 11/21/11.

[15]*Shannon*, 2012 WL 1552011, at *1; St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2011-KA-1730, 5/2/12.

## II.     Federal Petition

On April 12, 2013, the clerk of this Court filed Shannon's federal petition for habeas corpus relief in which he raised the following grounds for relief:[16] (1) prosecutorial misconduct that was unduly prejudicial; (2) the conviction was obtained by use of evidence obtained pursuant to an unlawful search and seizure; (3) the conviction was obtained in violation of the privilege against self-incrimination; (4) the conviction was obtained by the failure of the prosecution to disclose evidence favorable to the defense including fingerprints from the house and photographs of the marijuana and lab results; (5) he was denied the effective assistance of counsel based on fifteen articulated reasons; (6) the Trial Court erred in limiting the defense's cross-examination of Matherne; and (7) the federal court should review the record for plain error arising from prosecutorial misconduct during trial.[17]

The State filed an answer and memorandum in opposition to Shannon's petition conceding timeliness and urging that, as demonstrated by Shannon's own admission, he failed to exhaust state court remedies as to all of the claims raised.[18] Alternatively, the State argues that some of the claims are in procedural default and the remainder are without merit.

## III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[19] applies to this petition, which is deemed filed in this Court no later than March

---

[16] Rec. Doc. No. 1.

[17] *See* Rec. Doc. No. 1, p. 33, Motion for Plain Error Review.

[18] Rec. Doc. Nos. 10, 11.

[19] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify

21, 2013.[20]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Shannon's federal petition was timely filed.  As urged by the State, however, Shannon has not exhausted available state court remedies as to any of the claims raised.

## IV.  Exhaustion Doctrine

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court.  *Whitehead*, 157 F.3d at 387 (citing *Picard v.*

---

an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[20]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Shannon's federal habeas petition on April 12, 2013, when the filing fee was received.  Shannon dated his signature on the affidavit attached to his original submission to the Court on March 21, 2013.  This is the earliest date appearing in the record on which he could have presented the package of pleadings to the prison officials for mailing to the Court.

*Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32. When ineffective assistance of counsel is raised in the state courts, the claim is not exhausted where the petitioner did not raise or mention the same basis in the state court proceedings that are asserted in a federal petition. *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."; *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (factual bases underlying the ineffective assistance of counsel claim were "significantly different" from those raised in state court, and therefore, were not exhausted).

As addressed in the procedural history, Shannon filed a direct appeal from his conviction and did not pursue any further review in the Louisiana Supreme Court.[21]  He therefore has not exhausted state court remedies as to the claims raised in the direct appeal which are included in his federal petition as claim numbers one and six.  These claims are not exhausted.  *See Baldwin*, 541 U.S. at 32.

In addition, as Shannon repeatedly admits in his federal petition, he has not raised to any state court the remainder of his claims, numbered here as claims two, three, four, five and seven.  He has not presented these claims to any state court before presenting them to this federal court.  The claims are not exhausted.

Under the plain language of the applicable law, Shannon has not exhausted available state court remedies on the grounds for relief raised in this federal petition.  The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  Shannon's *pro se* status does not excuse his failure to exhaust.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (*pro se* status does not constitute "good cause" for failure to exhaust state remedies); *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007) (ignorance of the law does not constitute "good cause" for failure to exhaust).  The petition, therefore, should be dismissed for failure to exhaust available state court remedies.  *Rhines*, 544 U.S. at 277-78 (dismissal is appropriate where no good cause is shown for the failure to exhaust).

---

[21]A member of the Court's staff confirmed with the clerk of the Louisiana Supreme Court that Shannon has not filed for review in that court.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Shannon's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[22]

New Orleans, Louisiana, this 17th day of April, 2014.

                                                **KAREN WELLS ROBY**
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[22]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.